————o————

No. 3651.

(Court of Appeal, Parish of Orleans.)

JAMES BURNS vs. OTTO F. BRIEDE.

Appeal from Civil District Court, Division "E."

Cage, Baldwin & Crabites, for Plaintiff and Appellant.

H. E. Upton, for Defendant and Appellee.

A common owner of two adjoining town lots, separated by a brick wall, erected buildings on both lots and adopted this wall as the rear wall of all the buildings so erected and generally used and employed the wall

for the support of the several buildings erected on both sides of it. Subsequently he sold one lot to A and the other to B, the buildings still being on the lots as erected by the common owner. According to the deeds of sale a measurement is given in each lot which would bring a portion of the wall, thirteen inches from the dividing line and entirely upon A's lot, and would consequently make B's buildings, which rests upon or about the wall, encroach upon A's land by thirteen inches.

A sued B to have demolished and removed from the wall, and this thirteen inch space, the latter's building;

Held, that B has the right to use this wall as a wall in common because it was made such *par destination de pere de famille.*

MOORE, J. Plaintiff and defendant are adjoining proprietors, each owning certain lots, with the buildings and improvements thereon, situated in the City of New Orleans, in the square bounded by Religious, Celeste, Tchoupitoulas and Felicity streets, and fronting on the first named street.

Separating their respective properties there is a brick wall thirteen inches wide, running from the property line in front, to within eleven feet and three inches of the rear line, thence continuing on by a supplemental wall, of but nine inches in width, built flush with the thirteen-inch wall on the plaintiff's side, to the rear line.

Against these walls defendant has erected buildings and other structures, placing in the walls beams and other supports for this purpose, and has thus, and otherwise, used and employed the walls as party or common walls.

Plaintiff, admitting that the portion of the wall which is thirteen inches wide and is immediately on the dividing line of the two properties, may be used by the defendant as a party wall, conditioned upon the latter paying him one-half of its cost and one-half of the soil upon which it is built, which payment, it is alleged, the defendant refuses to make; and denying defendant's

411

right to so use and employ that portion of the wall which is but 9 inches wide and which it is claimed is fully 13 inches removed from the dividing line and is entirely on plaintiff's property, brings this suit to recover of the defendant the value of one-half of the 13 inch wall and one-half of the ground on which it stands and for an injunction commanding, after hearing, the demolition and removal of that portion of the buildings erected by defendant which project over and encroach upon the 9 inch wall and the space between the dividing line and the nine inch wall.

It appears that the parties to this suit acquired their respective properties from a common author, Joseph Beil.

Originally, Beil owned only the plaintiff's lot, the defendant's lot being then owned by one Henry Gotz, the latter's title then calling for a frontage of 16 feet, one inch and 7 lines.

Subsequently, Joseph Beil's widow (Beil having died and the widow, as widow in community and usufructuary, having been sent into possession of his estate,) acquired the Gotz's lot. Still later, Mrs. Beil having died, her heirs, the issue of her marriage with Joseph Beil, conveys the original Beil lot, plus 5 inches and 7 lines front of the original Gotz lot, to the plaintiff; and also conveys to one Rickey Fredericks, the Gotz lot, described as having a frontage on Religious street of 15 feet 8 inches "more or less," which is 5 inches 7 lines less than its original frontage.

Frederick subsequently sold to Miss Mary J. Briede, who in turn sold to the defendant. In these subsequent sales the property is described as having a front of 15 feet 8 inches, "more or less."

By the plans and sketches in evidence it is shown that under the original frontage of the Gotz lot, (15'-1"-7"') the 13 inch wall was 5 inches 7 lines on Gotz's property, and the the 9 inch wall was 9 inches and 1 line from it; and that by the present description, as adopted by the Beils when they sold, the 13 inch wall

is immediately up to the defendant's line, whereas the 9 inch wall, is 13 inches from it.

From this, it is argued by the plaintiff, a clear intention of the common owner is shown not to make these walls common or party wall; that if so much of the wall as is immediately on the line dividing the properties may be adopted by the defendant as a party wall he must bear half of the cost of that wall, but that so far as the 9 inch wall is concerned and which is 13 inches on plaintiff's property, the defendant cannot so adopt it and all encroachments on it, or on the soil which it rests must be demolished and removed.

This contention on the part of plaintiff entirely ignores the fact, conclusively established, that at the time when Widow Beil acquired the Gotz lot (Nov. 30th, 1886,) and for a great many years prior thereto, these walls marked the boundary between the two lots, and that all the buildings on the Gotz lot employed these walls as a part of these structures. The rear walls of these buildings were these two walls, and upon the latter were rested beams and joists to support the former; that during Mrs. Beil's ownership of the Gotz lot the buildings thereon were destroyed by fire; that Mrs. Beil at once had them rebuilt, employing these two walls as a part of the new buildings, just as they were a part of the old ones; and that as so conditioned, the new buildings being immediately up to, supported by, and resting on these walls, the property was sold to Fredericks, August 14th, 1893; plaintiff having acquired his lot one month prior thereto.

It is manifest, therefore, that whatever may have been the measurements given as to the frontage of the respective lots in the acts of sale by the Beil heirs to plaintiff and to Fredericks, respectively, they each took up the walls, neither of them acquiring beyond that, nor less than that, except as to the wall themselves which they acquired in joint ownership, 39 A. 1103; or which rather the common owner established as a continuous apparent servitude for the benefit of both lots.

413

This results from the doctrine of the law known as the destination *du pere de famille,* and which finds expression in the following articles of the Civil Code, viz:

Art. 767: The destination made by the owners is equivalent to title with respect to continuous apparent servitudes. By destination is means the relation established between two immovables by the owner of both, which would constitute a servitude of the two immovables belonging to two different owners.

Art. 769: If the owner of two estates, between which there exists an apparent sign of servitude, sell one of these estates, and if the deed of sale be silent respecting the servitude, the same shall continue to exist actively or passively in favor of or upon the estate which has been sold.

Art. 771: When a servitude is established, everything which is necessary to use such servitude is supposed to be granted at the same time with the servitude.

In Woodcock vs. Baldwin, 51 A., at p. 989, a case similar in principle to the instant cause, the court said:

"The destination *de pere de famille* is the use which the owner has intentionally established on a particular part of his property in favor of another part, and which is equal to a title with respect to perpetual and apparent servitudes thereon; and by this destination *de pere de famille* is meant, the disposition which the owner of two or more estates has made for their respective use.

"In relation to such a servitude, permanence of destination, and the *caractere de perpetuite,* are the essential prerequisites of their establishment.

"If the owner of two estates, between which there exists an apparent and continuous servitude, sell one of those estates without any mention being made of same in the title, it shall continue to exist in favor of or upon the estate which has been sold.

"The destination made by the owner is equivalent to title with regard to apparent and continuous servitudes."

And Art. 677 C. C. declares that: "Every wall which is a separation betwixt buildings as high as the upper part of the first story, or betwixt the yard and garden in cities and towns and their suburbs, of this State, and even any other inclosure in the field, shall be presumed to be in common, if there be no title, proof or mark to the contrary."

Nor can it be said that the servitude was lost by non-user. When Fredericks sold to Miss Briede the same buildings were on the property which had been put there by Mrs. Beil after the fire referred to. It was during the ownership of Miss Briede and before she sold to the defendant that the buildings erected on this lot by Mrs. Beil were demolished and the present buildings put up. These new buildings were placed in precisely the same position as were the old buildings, so far as regards the use of the walls in question; and here we may add that at no time during the demolition of the old buildings and the erection of the new ones did the plaintiff, who lived on his adjoining lot, protest or object to the use of the walls for the purpose for which and in the manner in which, they were employed.

On the contrary, he suggested to the builder certain changes which he said, would, if made, materially reduce his (plaintiff's) rate of insurance on his own adjoining buildings. As an accommodation to him the changes were made.

After the buildings were completed, it was then for the first time his complaint was made that the defendant was without warrant in law to use the walls as common or party walls. This alone would defeat his suit.

Pokorny vs. Pratt, 110 La. 610; Kelley vs. Taylor, 43 A. 1157.

Our esteemed brother of the District Court, however, dismissed plaintiff's petition for the reason that the defendant had the right to use the walls as common walls, because they were made such *par destination de pere de famille*. In this conclusion we concur, and the judgment appealed from is therefore affirmed.